[Cite as *State v. Henderson*, 2014-Ohio-4601.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 26018 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2013-CR-1084 |
| v. | : | |
| | : | |
| DAVID HENDERSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the _____17th_____ day of _____October_____, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

LUCAS W. WILDER, Atty. Reg.# 0074057, 120 West Second Street, 400 Liberty Tower, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1}    Defendant-appellant David Henderson appeals from his conviction for Having

A Weapon Under Disability. He contends that the trial court erred in overruling his challenge to the State's peremptory strike of an African-American member of the jury pool. He further contends that the jury rendered inconsistent verdicts, necessitating that the conviction and sentence be vacated. Finally, Henderson claims that the evidence is not sufficient to sustain the conviction, and that the conviction is against the manifest weight of the evidence.

{¶ 2} We conclude that the trial court did not err in denying Henderson's challenge to the State's removal of the prospective juror. We further conclude that the fact that Henderson was convicted of one count of the indictment while being acquitted of another, does not render the conviction invalid. Finally, we conclude that the State presented evidence sufficient to sustain the conviction and that the conviction is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.

## I. A Traffic Stop Leads to Henderson's Arrest

{¶ 3} At 2:00 a.m. one morning in April 2012, Montgomery County Sheriff's Deputy Kyle Baranyi was on routine patrol when he ran a check on the license plate of a white Chevy Impala that had pulled into a gas station. Upon discovering that the license registration had expired, Baranyi initiated a traffic stop of the vehicle. The driver, later identified as Henderson, had no identification. Baranyi determined that Henderson was driving under suspension. Baranyi decided to have the vehicle towed, and called for backup.

{¶ 4} While Baranyi was issuing citations to Henderson, Deputy Gust Teague arrived on the scene and conducted an inventory search of the vehicle. During the inventory search, Teague found a loaded 9 mm handgun in the unlocked glove compartment. Henderson was

arrested.

{¶ 5}     Henderson was interviewed later in the day by Montgomery County Sheriff's Department Detective Walt Steele.   Henderson denied any knowledge of the weapon, and said that he had never handled the gun and did not know that it was in the car.   He said that he had been with a friend named Walt and had merely borrowed Walt's car to go meet a woman.  Henderson denied knowing the owner of the vehicle, which registration records indicated belonged to Gwendolyn Acker.   Henderson was unable to provide a last name, address, or telephone number for his friend, Walt.

{¶ 6}     Henderson's fingerprints were not found on the gun.   However, a touch-DNA analysis indicated that Henderson's DNA was present on the weapon.

## II.   The Course of Proceedings

{¶ 7}     Henderson was indicted on one count of Having Weapons Under Disability (prior drug conviction) and one count of Improper Handling of a Firearm in a Motor Vehicle (loaded/no license).   Following a jury trial, he was convicted on the charge of Having Weapons Under Disability.   He was acquitted on the charge of Improper Handling of a Firearm.

{¶ 8}     From his conviction, Henderson appeals.

## III.   The Trial Court Did Not Err in Overruling Henderson's *Batson* Challenge

{¶ 9}     Henderson's First Assignment of Error states:

THE TRIAL COURT ERRED IN OVERRULING HENDERSON'S *BATSON* CHALLENGE OF THE STATE'S PEREMPTORY STRIKE OF A

BLACK JUROR.

{¶ 10}   Henderson contends that the trial court erred by denying his objection to the prosecution's peremptory challenge of an African-American juror on his jury venire, permitting the State to exercise a peremptory challenge on prospective Juror No. 10, in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

{¶ 11}   In *Batson*, the United States Supreme Court held that a state denies a black defendant equal protection when it puts him on trial before a jury from which members of his race have been purposefully excluded.   *Batson* has since been extended to criminal defendants who are not of the same race as the excluded jurors, *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411(1991).   The *Batson* court articulated a three-part test for determining if a peremptory challenge is racially motivated. *Batson*, at 96–98.   At the outset, the defendant must set forth a prima facie case of racial discrimination.   *Id.* at 96.   The burden then shifts to the prosecution to offer a race neutral-reason for the challenge.   *Id.* at 97.   Finally, the trial court must determine whether the   race-neutral reason advanced by the prosecution is credible, or merely a pretext for purposeful racial discrimination.   *Id.* at 98.

{¶ 12}   Following voir dire, the State used one of its peremptory challenges to strike prospective juror number 10.   Defense counsel then stated that it "would need to raise a *Batson*" because number 10 was the second African-American that the State had excused with a peremptory.   The trial court then asked the prosecutor for its reason for excusing the juror.   The State responded:

> Yes, Your Honor, I think that after the questioning of [Number 10] by both
> myself and Defense counsel, he appears to me to be a very shy reserved individual,

more of a follower than a leader. And it's my thought that he would not make a good juror because of his just, I believe, inability to be - - to stick up for himself. I just feel like he'd be more of a follower and not be able to independently think through this case.

{¶ 13} The trial court found the reason to be race-neutral. The trial court then stated:

I mean from his demeanor, and it will obviously not show on the video, he's been very reticent. He's been very quiet. He appears to be very, very nervous in terms of being scared about this process and appears to be very impressionable, was my impression.

He did say that - - when he said, "I agree with the others," I - - he wasn't saying he'll agree with everybody, but that he would you know, listen and - - but he, from my perspective, has demonstrated that he has a great deal of hesitancy in the process and, quite frankly, whether it's fear or misunderstanding. [sic]. So, I'm going to find that the State has provided a neutral reason for that challenge.

{¶ 14} During voir dire, the State questioned the prospective jurors on the issue of whether they would be able to stick with their own opinions even when different from that of all the other jurors during deliberations. Prospective juror Number 10 twice indicated that he would "agree with everybody else." When asked again if he would agree with the rest of the jurors, he answered affirmatively. Furthermore, some of his responses to other questions were not discernable and thus not transcribed. This is consistent with the assessment that the prospective juror was quiet and reticent. Because the third stage of the analysis rests largely on the trial court's evaluation of the prosecutor's credibility, an appellate court is required to give the trial

court's findings great deference. *Hicks v. Westinghouse Materials Co.*, 78 Ohio St.3d 95, 102, 676 N.E.2d 872 (1997). We find no basis in this record to second-guess the trial court's *Batson* analysis

{¶ 15}   The first assignment of error is overruled.

#### IV.   Factually Inconsistent Verdicts on Different Counts
#### of an Indictment Do Not Afford a Basis for Reversal

{¶ 16}    Henderson's Second Assignment of Error is as follows:

THE TWO COUNTS AGAINST HENDERSON ARE THE SAME AND INCONSISTENT VERDICTS REQUIRE THE CONVICTION AND SENTENCE BE VACATED.

{¶ 17}    Henderson contends that his conviction for Having Weapons Under Disability is factually inconsistent with the verdict of acquittal on the charge of Improper Handling of a Firearm in a Motor Vehicle.

{¶ 18}   This court has held that "a conviction on one count of an indictment may not be reversed upon the ground that it is inconsistent with an acquittal on another count."  *State v. Hayes*, 166 Ohio App.3d 791, 2006-Ohio-2359, 853 N.E.2d 368, ¶ 35.   This is consistent with the holding of the Supreme Court of Ohio in *State v. Lovejoy*, 79 Ohio St.3d 440, 683 N.E.2d 1112 (1997), wherein the Supreme Court of Ohio held that "[t]he several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *Id*. at paragraph one of the syllabus.   Therefore, assuming, without deciding,

that the jury's verdicts in the case before us were factually inconsistent, that does not support a reversal of the judgment.

{¶ 19}   The second Assignment of Error is overruled.

### V.   Henderson's Conviction Is Supported by the Evidence,
### and Is Not Against the Manifest Weight of the Evidence

{¶ 20}   The Third Assignment of Error asserted by Henderson provides:

MR. HENDERSON'S CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 21}   Henderson contends that the evidence does not support his conviction. Specifically, he argues that the evidence shows that he did not have or possess the handgun.   In support, he argues that he was not the owner of the car, the sole fingerprint taken from the gun was not matched to him, and no one observed him with the gun.

{¶ 22}   A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law.  *State v. Thompkins*,  78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).   The proper test to apply to the inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991): "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant

inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶ 23}    When analyzing a challenge to the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. McKnight*, 107 Ohio St.3d 101,112, 2005–Ohio–6046, 837 N.E.2d 315. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.   *Id.*

{¶ 24}    The credibility of the witnesses and the weight to be given to their testimony are primarily matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 25} Henderson was convicted of Having Weapons While Under Disability, in violation of R.C. 2923.13(A)(3), which provides:

(A) Unless relieved from disability as provided in section 2923.14 of the

Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

* * *

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *.

{¶ 26} The parties stipulated that Henderson had a prior felony drug conviction. The evidence established that Henderson was driving a car; he was the only occupant of the car; there was a handgun in the glove compartment of the car; and Henderson's DNA was retrieved from the weapon. "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). While Henderson was not seen with the gun in his hand, there was evidence of his constructive possession of the gun, which is sufficient to support a finding of guilt under the statute. *State v. Cherry*, 171 Ohio App.3d 375, 2007-Ohio-2133, 870 N.E.2d 808, ¶ 11 (2d Dist.) (finding a defendant in constructive possession of a gun where the gun was found on the floor of the side of the car where the defendant had been sitting).

{¶ 27} We conclude that there is sufficient evidence to support the conviction and that the conviction is not against the manifest weight of the evidence.

{¶ 28} The Third Assignment of Error is overruled.

## VI.  Conclusion

{¶ 29}   All of Henderson's Assignments of Error being overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and HALL, J., concur.

Copies mailed to:

Mathias H. Heck
Andrew T. French
Lucas W. Wilder
Hon. Mary Katherine Huffman