[Cite as *State v. Allen*, 2019-Ohio-1797.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28078 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-3944 |
| | : | |
| JOSEPH KENYON ALLEN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of May, 2019.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

CARLO C. MCGINNIS, Atty. Reg. No. 0019540, 55 Park Avenue, Oakwood, Ohio 45419
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Joseph Kenyon Allen appeals from his conviction on charges of forgery and having a weapon while under disability.

{¶ 2} Allen advances three assignments of error. First, he contends the trial court erred in overruling his motion to suppress a handgun found when police executed a warrantless search of an apartment he shared with his mother. Second, he challenges the legal sufficiency of the State's evidence to establish the "possession" element of having a weapon while under disability. Third, he asserts that third-person statements not adopted by him in jail telephone calls constituted inadmissible hearsay and violated his right to confrontation.

{¶ 3} The record reflects that Allen was charged with aggravated robbery, forgery, and two counts of having a weapon while under disability. The charges stemmed from an allegation that he had met two teen-aged boys outside his apartment and had purchased an "Xbox One" game system from them using "fake" money in an envelope. The boys opened the envelope immediately after the transaction, saw the fake money, and followed Allen back into his apartment building, where they claimed he pulled a handgun and threatened them with it. The boys fled and called the police. The following day, they identified Allen in a photospread as the perpetrator. Two police officers went to Allen's apartment and made contact with his mother, Loretta Nelson. While speaking with Nelson inside the apartment, the officers heard a noise and found Allen in a bedroom walking toward the bathroom. They handcuffed him and placed him in a cruiser. Two detectives arrived shortly thereafter. After obtaining Nelson's written consent to search the apartment, they found a black handgun in a laundry basket in the bedroom where Allen

had been apprehended.

{¶ 4} Prior to trial, Allen moved to suppress the handgun found in the apartment on the basis that it was obtained through an unlawful search. Specifically, he argued that Nelson did not freely and voluntarily consent to the search of the apartment. (Motion, Doc. #38.) The trial court held a hearing on the motion. The only witnesses were detective Lindsey Dulaney and Nelson. Based on the testimony presented, the trial court held that Nelson had given valid consent for the search that resulted in discovery of the firearm. (Suppression Tr. at 26-28.) Following the trial court's ruling, the case was bifurcated at Allen's request. The case proceeded to a jury trial on the charges of aggravated robbery and forgery. The jury found Allen guilty of forgery but not guilty of aggravated robbery. The trial court then held a bench trial on two counts of having a weapon while under disability and on a repeat-violent-offender specification. The trial court dismissed the specification in light of Allen's acquittal on the aggravated-robbery charge. After considering the evidence from Allen's jury trial and the additional evidence presented in the bench trial, the trial court found him guilty on both counts of having a weapon while under disability. At sentencing, the trial court merged the two weapon-under-disability counts. It imposed concurrent prison sentences of 12 months for forgery and 36 months for having a weapon while under disability. This appeal followed.

{¶ 5} For purposes of our analysis, we will address Allen's assignments of error in reverse order. In his third assignment of error, he challenges the trial court's admission of an audio recording of jail telephone calls. On portions of the calls, which involved Allen, his mother, and an unidentified female speaker, there was discussion about a firearm. The State sought to introduce the recording during the bench trial on the weapon-under-

disability charges. Defense counsel raised a hearsay objection to statements made by anyone other than Allen. (Tr. at 317.) The State responded that it was not offering the statements by anyone other than Allen for the truth of the matter asserted. (*Id.*) The trial court overruled the objection. (*Id.* at 318.) The trial court later sustained an objection to statements by the unidentified female and indicated that it would not consider those statements. (*Id.* at 321.)

{¶ 6} In support of its verdict, the trial court discussed the phone calls and identified the parts on which it relied as follows:

Turning now to the phone calls that were introduced this morning, in regards to Exhibit 2, the Court had heard the phone calls and listened to the phone calls, but finds that the Defendant was identified by the detective as being his voice, as well as the mother on some of the phone conversation. There was an unknown female that was listed in one part of the conversation, and the Court disregarded any statements made [by] that female.

The Court finds the Defendant knew that he was being recorded, as that the recording starts that way that he should be informed, as well as the others, that the phone conversations are being recorded. Exhibit 12 reflects three significant parts in the phone calls. First, there was a phone call, which was identified as the Defendant and his mother, in which the mother states, "I did not know you had a gun," and Defendant responds shortly thereafter, "You told me to hide the gun."

A little bit later, there was an unknown female which the Defendant

was identified as stating, "I know I'm going back," and the Court makes the inference that he's referring to prison when he makes that statement. And further, he stated, "They found that gun in there." Then there was a third part of the conversation which his mother, and again, the other female was also part of it at various times, in which Defendant makes the following statements: "My gun is green." He then states, "My gun is not black." Say, "Mama, you know—Mama, you seen the color of my gun." And another statement, "My gun is green and chrome." And finally, "The gun they found was black." Defendant's mother makes some reference to the gun, but saying that she just saw the clip first.

(Tr. at 338-339.)

{¶ 7} The only potentially meaningful statement by someone other than Allen referenced by the trial court was his mother's statement, "I did not know you had a gun." That statement was not hearsay because it was not offered for the truth of the matter asserted. It was immaterial whether Allen's mother knew he had a gun, and the State was not trying to prove his mother's knowledge. The potential relevance was in Allen's response. After his mother essentially accused him of having a gun, Allen did not deny the accusation. Instead, he arguably implied that he did possess a gun when he responded, "You told me to hide the gun." This response was admissible as an admission of a party-opponent under Evid.R. 801(D)(2), as were his other statements referenced by the trial court. With regard to the confrontation argument Allen raises on appeal, he failed to raise a Confrontation Clause issue below. Regardless, because his mother's statement about her lack of knowledge of him having a gun was not hearsay, it also was not

"testimonial," and his constitutional right to confrontation as expressed in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) was not violated. *State v. Ali*, 2d Dist. Clark No. 2014 CA 59, 2015-Ohio-1472, ¶ 25. The third assignment of error is overruled.

{¶ 8} In his second assignment of error, Allen challenges the legal sufficiency of the State's evidence to establish the "possession" element of having a weapon while under disability. In the body of his brief, he also mentions the manifest-weight-of-the-evidence. He advances several arguments in support. First, he contends the record does not support a finding of "constructive possession" based on discovery of the handgun in a laundry basket in his mother's apartment. Second, he notes that the trial court referenced events occurring on both December 10, 2017 (the date he allegedly threatened the victims with a handgun) and December 12, 2017 (the date detectives found a handgun in his mother's apartment), whereas his indictment alleged that the weapon-under-disability offense occurred "on or about" December 10, 2017. Third, he claims the trial court erred in finding that he possessed a handgun when he pointed it at the victims. Allen argues that this finding is impermissibly inconsistent with the jury's verdict acquitting him of aggravated robbery.

{¶ 9} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist. 2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's

guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 10} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 11} With the foregoing standards in mind, we find legally sufficient evidence to support Allen's conviction for having a weapon while under disability. His conviction also is not against the weight of the evidence. In count two, Allen was charged with violating R.C. 2923.13(A)(2). Count three charged a violation of R.C. 2923.13(A)(3). In relevant part, the statute provides:

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

\* \* \*

(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

**{¶ 12}** The only difference between counts two and three is that one alleged Allen was under disability due to a prior offense of violence and the other alleged he was under disability due to a prior felony drug offense. Both counts alleged that he had a weapon while under disability "on or about" December 10, 2017, which is when the victims testified he purchased a game system with "fake" money and threatened them with a handgun. In explaining its verdict, the trial court explicitly found credible the victims' testimony that Allen threatened them with a handgun. The trial court stated:

* * * First of all, I've considered the testimony of the two witnesses that testified in the prior [jury] trial * * *. *I find their testimony to be credible in the identification of the Defendant, and the Defendant did have a firearm in his possession.* They described it as a black firearm, and a black firearm was found later in the residence, [where] the Defendant stays.

*Both testified to Defendant stating something to the effect of, quote,*

*"Don't move or I'm going to blow this bitch." Court makes the inference that*

*this is referring to a use of a firearm.* * * *

(Emphasis added.) (Tr. at 337-338.)

{¶ 13} The victims' trial testimony that Allen pulled a handgun on them itself was legally sufficient to convict him of having a weapon while under disability. Notably, the trial court credited this testimony that Allen had a firearm in his possession on December 10, 2017. Thus, the record is sufficient to support a finding of *actual possession* by Allen without regard to constructive possession two days later when a handgun was found near him in a clothes basket. In light of the victims' testimony, which the trial court credited, we further conclude that a finding that Allen had actual possession of a firearm on December 10, 2017 also is not against the manifest weight of the evidence.

{¶ 14} We are equally unpersuaded by Allen's claim that his acquittal on the aggravated-robbery charge precluded the trial court from relying on the victims' testimony that he pulled a handgun on them. We find this argument unpersuasive for at least two reasons. First, we do not know why the jury acquitted him of aggravated robbery. The jury may have reasoned that the theft offense had been completed and that Allen was not actively "fleeing" from it when the victims confronted him inside his apartment building. If this is what the jury determined, then no aggravated robbery occurred even if Allen did brandish a handgun. *See* R.C. 2911.01(A)(1). Second, even if we could infer from the jury's verdict that it did not believe Allen pulled a handgun on the victims, the trial court was not obligated to reach the same conclusion. We have recognized that " 'a conviction on one count of an indictment may not be reversed upon the ground that it is inconsistent with an acquittal on another count.' " *State v. Henderson*, 2d Dist. Montgomery No. 26018,

2014-Ohio-4601, ¶ 18, quoting *State v. Hayes*, 166 Ohio App.3d 791, 2006-Ohio-2359, 853 N.E.2d 368, ¶ 35 (2d Dist.). This is particularly true in the present case, which involved a bifurcated proceeding with different triers of fact. Thus, even if we were to assume some inconsistency between the jury acquitting Allen of aggravated robbery and the trial court convicting him of having a weapon while under disability based on the victims' testimony, we see no basis for reversing the trial court's verdict. For the foregoing reasons, the second assignment of error is overruled.

{¶ 15} In his first assignment of error, Allen challenges the trial court's denial of his motion to suppress the handgun found in the clothes basket in his mother's apartment. Allen contends the State failed to prove that his mother voluntarily consented to the entry and search of her apartment.

{¶ 16} In his suppression motion, Allen set forth the following factual allegations about law enforcement's interaction with his mother:

> On or about December 12, 2017, during the investigation of the alleged offense, Officers visited 108 Melba Ave., Apartment 310 with the understanding that Allen resided there with his Mother, Loretta Nelson (Nelson). Officers made contact with Nelson at that location where it is alleged that she signed a Consent to Search Form and told the officers that Allen sometimes stays there but does not have a room in the Apartment and is not on the Lease.

> Nelson contends that the Officers did not indicate they were looking for Allen; rather, Nelson informs the undersigned Counsel that Officers represented to her that they were looking for her boyfriend whose name is

"James." Nelson denies signing a Consent to Search form and only consented to the search of her Apartment to show the Officers that "James" was not there. The Officers searched the Apartment and allegedly located a black handgun in a laundry basket in the bedroom.

(Doc. # 38 at 2.)

{¶ 17} Based on the foregoing allegations, Allen asserted that "Nelson did not freely and voluntarily consent to the search of her residence and the evidence of a handgun should not be permitted to be introduced at trial." (*Id.* at 3.)

{¶ 18} Two witnesses testified at the subsequent suppression hearing. The first was detective Lindsey Dulaney. She testified that when she and detective Terry Perdue arrived at Nelson's apartment on December 12, 2017, Allen was sitting in the back of another officer's police cruiser. (Suppression Tr. at 8.) Dulaney first spoke with the initial responding officers who had taken Allen into custody. (*Id.* at 11.) Dulaney testified that she and Perdue then approached Nelson, who was alone in the apartment. Nelson told the detectives that Allen and her boyfriend, James Jimerson, sometimes stayed at the apartment. (*Id.* at 9.) After that conversation, Dulaney obtained oral consent to search the apartment. Before doing so, however, the detective went over a consent-to-search form with Nelson and asked Nelson to sign if she wished to give the detectives permission to search the apartment. (*Id.* at 10.) Dulaney testified that she read the form to Nelson and explained that the detectives were looking for evidence related to the crime of robbery. (*Id.* at 11.) Nelson then signed and dated the form. (*Id.* at 12.) Dulaney testified that no threats were made and that Nelson appeared to understand what she was doing. (*Id.*)

{¶ 19} Following Dulaney's testimony, defense counsel called Nelson as a

witness. When asked about her understanding when she signed the consent form, Nelson responded, "They said I would cooperate, but my understanding was they were looking for James [Jimerson]." (*Id.* at 19.) Nelson proceeded to discuss her interaction with the two police officers who had taken Allen into custody before the detectives arrived. She testified that she opened the door and saw the officers accompanied by the apartment manager. According to Nelson, one of the officers asked whether "James" was there. (*Id.* at 19.) Nelson responded that James was not there. (*Id.*) She testified that the following exchange then occurred with one of the officers:

> And he said can we come in and search. I said sure, because James wasn't there. And he was searching, and Joseph [Allen] was in the bathroom. Well, at that time I couldn't think. They just grabbed him up, you know, and they told me, the one officer said, I thought you said James wasn't here. I said, that isn't James. I said, that's Joseph. He said—how'd he say it, tell me anything. I said, I swear to God that's not James, that's Joseph. He said, well, when you swear to God, that means you're lying. He said, but you know by being in DMHA, that you've got three days to move out and that they—they're—they're allowed to come into my apartment, if I'm living with DMHA. * * *

(*Id.* at 20.)

{¶ 20} According to Nelson, detective Dulaney was not yet present when the foregoing conversation occurred. (*Id.* at 21.) Nelson testified that the two responding officers proceeded to search her apartment before Dulaney arrived and also showed her the consent form. (*Id.*) Nelson did not testify, however, that the two officers found the

handgun in the clothes basket.[1] With regard to Dulaney, Nelson testified that she did not recall the detective reading the consent form to her. (*Id.*) She also testified that she did not read the form before signing it because she was "nervous." (*Id.* at 22.) On cross examination, Nelson stated that she did not "remember" Dulaney reviewing the form. (*Id.* at 23.) Nelson also testified that the two responding officers had told her detectives were going to come to search the apartment. According to Nelson, she responded, "[W]ell, that's fine because I don't have anything to hide." (*Id.*) Nelson then engaged in the following exchange with the prosecutor:

Q. And when Detective Dulaney went over the form with you, did you ask her any questions? Did you tell her that you did not understand what you were signing?

A. And, well, to be truthful with you, it was told to me that I was signing because I cooperated.

Q. That you were signing because you cooperated?

A. I cooperated. I didn't get—because at the time the first police officer said, if he had to leave and go get a search warrant, it was going to make the problem more worse. And I said, well, I don't have nothing to hide. What are ya'll looking for? They never told me what had happened.

(*Id.*)

{¶ 21} Following Nelson's testimony, the trial court heard argument from the

---

[1] Although the suppression-hearing transcript fails to identify when the handgun was discovered, the State presented uncontroverted evidence at trial that detectives Dulaney and Perdue found the handgun in the clothes basket when they searched the apartment. (Trial Tr. at 197, 210.)

parties. The State argued that the handgun was discovered pursuant to valid consent to search obtained orally by the responding officers and then obtained in writing by Dulaney. (*Id.* at 24.) In response, defense counsel argued:

> Respectfully, we heard testimony from Ms. Nelson that it appears that officers did gain entry into her residence before she made contact with Detective Dulaney and reviewed a consent to search form. I submit that there seems to have been a search non-consensual prior to Detective Dulaney's arrival and to review the consent to search, notwithstanding the fact that police are allowed to not necessarily be forthcoming in the truth of their presence, did lead Ms. Nelson to believe, under false premises [sic], that they were looking for her boyfriend, James Jimerson.
>
> For these reasons, Your Honor, I respectfully move the Court to see that this consent to search was not voluntarily and freely given.

(*Id.* at 25.)

{¶ 22} In overruling Allen's suppression motion, the trial court found clear and convincing evidence that Nelson had given the responding officers oral consent to enter and search her apartment and that she had given the detectives written consent to search. (*Id.* at 27-28.) We see no error in the trial court's ruling. Although portions of Nelson's testimony are somewhat confusing, she herself testified that one of the initial officers on the scene asked her whether they could enter her apartment and search. She admitted giving the officers oral consent. (Suppression Tr. at 20.) Almost immediately upon entering the apartment, the officers discovered Allen and arrested him. Although Nelson testified about being warned she was in DMHA housing and potentially having three days

to move out, the officers already had entered the apartment with her permission and had discovered Allen before this alleged conversation occurred. As set forth above, Dulaney then arrived and obtained Nelson's written consent to search the apartment for evidence related to a robbery. The trial court found that Nelson's written consent was voluntarily obtained. We agree with that determination, which is supported by the evidence.

{¶ 23} In any event, we would affirm the trial court's judgment even assuming, arguendo, that the handgun discovered in the clothes basket was the product of an unlawful search. The jury convicted Allen of forgery and acquitted him of aggravated robbery. The handgun found in his mother's apartment was not relevant to the forgery conviction. Moreover, the trial court credited the victims' testimony that Allen pulled a handgun on them inside the apartment building on December 10, 2017. That testimony alone is enough to uphold his conviction for having a weapon while under disability. Given the trial court's determination that Allen had actual possession of a firearm on December 10, 2017, it was unnecessary for the State also to prove constructive possession based on the firearm found in the apartment on December 12, 2017. Thus, any error in the trial court's failing to suppress evidence of the handgun found in the apartment necessarily would have been harmless beyond a reasonable doubt. For the foregoing reasons, we overrule Allen's third assignment of error.

{¶ 24} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and DONOVAN, J., concur.

Copies sent to:

Michael P. Allen
Carlo C. McGinnis
Hon. Dennis J. Adkins