[Cite as *State v. Blankenship*, 2023-Ohio-4442.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-9 |
| | : | |
| v. | : | Trial Court Case Nos. 22-CR-0812(B); |
| | : | 23-CR-0033 (B) |
| RICHARD BLANKENSHIP | : | |
| | : | (Criminal Appeal from Common Pleas |
| Appellant | : | Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on December 8, 2023

. . . . . . . . . . .

ADAM JAMES STOUT, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Richard Blankenship appeals from his conviction following a jury trial on charges of engaging in a pattern of corrupt activity, trafficking in a fentanyl-related compound with a major-drug-offender specification, illegal assembly or possession of chemicals for the manufacture of drugs, and aggravated trafficking in methamphetamine with a firearm specification.

{¶ 2} Blankenship contends the trial court erred in not dismissing for cause a juror who previously had been his landlord. He also challenges the weight and sufficiency of the evidence to sustain his convictions for engaging in a pattern of corrupt activity, aggravated trafficking in methamphetamine, and trafficking in a fentanyl-related compound. He additionally contests the trial court's admission of a jail phone-call recording that the prosecutor did not disclose until the morning of trial. Finally, he contends the trial court's judgment entry imposed an improper sentence under the Reagan Tokes Law.

{¶ 3} We conclude that the trial court did not abuse its discretion in declining to dismiss the juror for cause or in admitting the phone-call recording. The challenged convictions were supported by legally sufficient evidence and were not against the weight of the evidence. The trial court's judgment entry also correctly calculated and stated Blankenship's aggregate minimum prison term and his maximum term under the Reagan Tokes Law. However, its judgment entry did erroneously recite a separate maximum term for each Reagan Tokes qualifying offense. Accordingly, the trial court's judgment will be affirmed in part, reversed in part, and remanded for the sole purpose of correcting references to a separate maximum prison term for each Reagan Tokes qualifying offense.

## I. Facts and Course of Proceedings

{¶ 4} The charges against Blankenship stemmed from an undercover investigation of drug trafficking in Clark County. Evidence presented at trial established that the investigation began around July 2021 when police cultivated a confidential source who provided information about a drug-trafficking operation involving three individuals—Ariel

Bush, Todd Frye, and Richard Blankenship. The source reported that Bush was "pressing" or manufacturing pills disguised and labeled as Percocet but containing fentanyl. The source provided an approximate location where Bush was staying. A detective subsequently located Facebook conversations in which an individual sought to obtain real Percocet pills from Bush, requesting not to receive pressed fentanyl disguised as Percocet.

{¶ 5} Springfield police initiated surveillance on Bush. They discovered that he resided at 819 Grant Street with his girlfriend, Heather Flaker, and drove a Ford Mustang registered to her. Police also obtained a cell-phone number for Bush and learned that a "top caller" of his was Blankenship. Police placed a GPS tracking device on Bush's car and found that one of his primary destinations was Blankenship's residence at 124 North Shaffer Street. Investigators also obtained Blankenship's phone records and located approximately 400 text and cell phone conversations between Bush and Blankenship each month.

{¶ 6} On August 24, 2021, police conducted a traffic stop of a vehicle observed leaving Bush's residence. A search of the vehicle uncovered five pounds of marijuana in the trunk and a firearm in the back seat. Further review of Bush's Facebook account suggested that he was trafficking marijuana, methamphetamine, and "pressed pills" from his residence. Investigators also found the name Todd Frye in Facebook records related to drug transactions. Police began tracking Frye's vehicle and discovered that he frequently visited Blankenship's residence. Police learned that Frye was under investigation in Union County for allegedly selling pressed fentanyl pills which had

resulted in an overdose death. Investigators obtained Frye's cell phone number and found that he was communicating with Bush and Blankenship.

{¶ 7} Police began using a confidential source to request pressed fentanyl pills from Bush through phone calls and text messages. On these occasions, Bush would respond by saying things like "he's doing them now" or "I'm going to check on them." Police would watch as the tracker on Bush's vehicle moved to 124 North Shaffer Street. Officers conducting surveillance also observed Bush arriving at 124 North Shaffer Street and entering the garage. The confidential source subsequently purchased counterfeit Percocet pills from Bush. The pills were imprinted with the numbers "10/325," indicating that they were Percocet, when in fact they contained fentanyl mixed with acetaminophen.

{¶ 8} Police obtained search warrants for 819 Grant Street and 124 North Shaffer Street. They executed the warrants on November 8, 2021. The search of Blankenship's residence and garage revealed large quantities of drugs, including methamphetamine and four pounds of fentanyl mixed with acetaminophen. Police also found a pill-pressing machine, Firmapress (a binding agent to make tablets), counterfeit Percocet pills containing fentanyl and acetaminophen, hundreds of dollars in cash, digital scales in a bedroom, a blender with white powder on it, and an AK-47 rifle. Some of the drugs were packaged in baggies in preparation for distribution. The search of Bush's residence resulted in discovery of marijuana, vacuum-sealed bags, a blender with white acetaminophen powder, scales, and firearms.

{¶ 9} In addition to the foregoing evidence, the State's evidence at trial included cell-phone text exchanges between Bush and Blankenship discussing apparent drug

transactions. The State also presented evidence of text exchanges between Blankenship and prospective drug purchasers regarding specific drug requests, as well as text exchanges between Frye and Blankenship about the manufacture and trafficking of drugs. During a police interview, Blankenship admitted keeping the pill-pressing machine at his home, storing drugs in his safe, and handing drugs to buyers at his house on multiple occasions within 30 days prior to his arrest. He claimed that his involvement was at Bush's request and that he was "a pawn in their scheme."

{¶ 10} Frye testified against Blankenship at trial and recalled pressing the fentanyl pills at Blankenship's house. Frye stated that he, Blankenship, and Bush all assisted in pressing the pills. Frye recalled participating in the operation approximately seven or eight times during the time frame set forth in the indictment against Blankenship. On those occasions, Frye travelled from Logan County to Clark County to meet with Bush and Blankenship to press pills. Frye acknowledged a joint effort involving the three of them working together to manufacture the pills. According to Frye, Bush provided the ingredients, and Frye and Blankenship pressed pills together. On each occasion, they pressed between 100 and 200 pills.

{¶ 11} Based on the evidence presented, the jury found Blankenship guilty of the four charges set forth above. It acquitted him of two charges and found him guilty of other charges and specifications that were merged into the above-referenced charges as allied offenses. At disposition, the trial court imposed prison terms of 11 to 16.5 years for engaging in a pattern of corrupt activity, 11 to 16.5 years for trafficking in a fentanyl-related compound, five years for the major-drug-offender specification, three years for

illegal assembly or possession of chemicals for the manufacture of drugs, 7 to 10.5 years for aggravated trafficking in methamphetamine, and one year for the firearm specification. The trial court ordered all sentences to be served consecutively except for the three-year sentence for illegal assembly or possession of chemicals for the possession of drugs, which it ordered to be served concurrently. The trial court determined that Blankenship's aggregate prison term was 35 to 40.5 years. Blankenship timely appealed, advancing four assignments of error.

## II. Jury Selection

{¶ 12} In his first assignment of error, Blankenship contends the trial court erred in allowing juror number five to sit on the jury. He argues that the trial court should have dismissed the juror for cause because the juror previously had been his landlord.

{¶ 13} During voir dire, juror number five professed no familiarity with Blankenship. Defense counsel then asked whether Blankenship had been a tenant in an apartment complex the juror managed. The juror responded that he did not know, did not recognize Blankenship, and did not recall interacting with him. When questioned about Blankenship's girlfriend dying in the unit while Blankenship lived there, the juror recalled an incident but did not remember anything specific.

{¶ 14} In response to a defense motion to remove juror number five from the prospective jury pool for cause, the juror stated that he believed he was impartial, thought he could perform his job as a juror, and still did not recall anything about Blankenship. The trial court overruled the challenge for cause. Prior to the jury being impaneled, juror number five later requested a meeting in chambers. He explained that was beginning to

have some memories of Blankenship. The juror recalled the death of Blankenship's girlfriend and thought Blankenship looked "familiar." The juror maintained that he still had "no negative or positive reaction" to Blankenship. At that point, defense counsel declined an opportunity to seek the juror's dismissal for cause.

{¶ 15} A prospective juror may be removed for cause based on an inability to be fair and impartial or for suspected bias against the prosecution or the defense. *State v. Hartley*, 2d Dist. Montgomery No. 29510, 2023-Ohio-158, ¶ 67. "In deciding whether to exclude a juror for cause, the court must determine whether the prospective juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *State v. White*, 82 Ohio St.3d 16, 20, 693 N.E.2d 772 (1998), quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). "Because the decision whether to disqualify a juror for cause is a discretionary function of the trial court, said decision is not reversible on appeal absent an abuse of discretion." *Hartley* at ¶ 68.

{¶ 16} We see no abuse of discretion here. Prior to Blankenship's motion to remove juror number five for cause, the juror expressed virtually no recollection of him. The juror professed a belief that he was impartial and capable of performing his function. Even after the additional conversation in chambers, the juror assured the trial court that he had no positive or negative reaction to Blankenship. Having reviewed the voir dire transcript, we see no grounds for removing juror number five for cause. Accordingly, the first assignment of error is overruled.

### III. Weight and Sufficiency of Evidence

{¶ 17} In his second assignment of error, Blankenship challenges the legal sufficiency and manifest weight of the evidence to sustain his convictions for engaging in a pattern of corrupt activity, aggravated trafficking in methamphetamine, and trafficking in a fentanyl-related compound.

{¶ 18} With regard to the convictions involving methamphetamine and a fentanyl-related compound, Blankenship contends the State presented no evidence of his actually engaging in drug sales or engaging in communications in which he agreed to do so. Blankenship maintains that no one testified about his selling drugs, police did not put a tracking device on his vehicle, he did not respond to text inquiries from prospective drug buyers, he did not initiate text exchanges about drug transactions, and many of the text exchanges were undated or dates were not presented at trial. Under these circumstances, he contends the evidence did not support his convictions for aggravated trafficking in methamphetamine and trafficking in a fentanyl-related compound.

{¶ 19} With regard to his conviction for engaging in a pattern of corrupt activity, Blankenship contends the State failed to prove that he was part of an "enterprise" or that he engaged in a "pattern of corrupt activity." Blankenship contends Frye failed to specify when Blankenship assisted in using the pill-pressing machine. He notes too that Frye never saw him actually sell drugs. Blankenship also reasons that the "nebulous nature of the text evidence" failed to establish a pattern of corrupt activity. Finally, he notes that the jury acquitted him on a charge of illegal manufacture of drugs.

{¶ 20} Upon review, we find Blankenship's second assignment of error to be unpersuasive. "An appellate court's function when reviewing the sufficiency of the

evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 21} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 22} With the foregoing standards in mind, we reject Blankenship's legal-sufficiency and manifest-weight challenges. As relevant here, the drug-trafficking statute provides that no person shall knowingly "[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender

or another person." R.C. 2925.03(A)(2). The jury also was instructed on complicity and Blankenship's guilt if he acted in concert with others and played a part in committing the trafficking offenses.

{¶ 23} As set forth above, police found large quantities of drugs at Blankenship's residence, including methamphetamine that had been weighed and packaged in baggies for sale and four pounds of fentanyl mixed with acetaminophen as well as counterfeit Percocet pills containing fentanyl. Police also found cash, digital scales in a bedroom, a blender with white powder on it, and an AK-47 rifle. Frye testified that he, Blankenship, and Bush all assisted in pressing the fentanyl pills a number of times during the period alleged in the indictment. Frye testified that Bush supplied the ingredients and that Frye and Blankenship pressed pills together. The State introduced cell-phone text exchanges between Bush and Blankenship discussing apparent drug transactions, text exchanges between Blankenship and prospective drug purchasers regarding specific drug requests, and text exchanges between Frye and Blankenship about the manufacture and trafficking of drugs.

{¶ 24} Finally, during an interview at the police station Blankenship admitted keeping the pill-pressing machine at his residence. He also admitted handing drugs to buyers several times during the 30-day period prior to his arrest. He testified that he would give the drugs to buyers at Bush's request. Blankenship claimed that he was just a "pawn" in the operation. Referring to his actions, however, he recognized that "all of this is illegal." Although he minimized his conduct, he acknowledged being "just as guilty for storing this stuff as they are for making it."

{¶ 25} The State's evidence supported a finding that Blankenship was guilty of engaging in the preparation of methamphetamine and a fentanyl-related compound for distribution with knowledge that the contraband was intended for sale. The fact that some of the text exchanges referenced above were undated and that Blankenship did not initiate or respond to some of them fails to persuade us otherwise. Likewise, the fact that police did not put a tracking device on Blankenship's vehicle is inconsequential. Given that Blankenship's residence was the base of operations, police tracked Bush and Frye going there. Although Blankenship contends no one testified about his actually selling drugs, he admitted obtaining and handing drugs to buyers at Bush's request. In any event, the trafficking charges under R.C. 2925.03(A)(2) required only evidence of preparation for distribution with intent to sell, not proof of actual sales.

{¶ 26} Based on the record before us, a rational trier of fact reasonably could have found Blankenship guilty of the trafficking charges. We also are unpersuaded that the jury clearly lost its way and created a manifest miscarriage of justice. This was not an exceptional case in which the evidence weighed heavily against the convictions for trafficking in methamphetamine and a fentanyl-related compound.

{¶ 27} We reach the same conclusion with regard to Blankenship's conviction for engaging in a pattern of corrupt activity. He was charged with violating R.C. 2923.32(A)(1), which provides: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *." An "enterprise" includes a "group of persons associated in fact." R.C. 2923.31(C). A "pattern of corrupt activity" "means two or more

incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). The corrupt activity alleged in the indictment was drug trafficking.

{¶ 28} The State's evidence supported a finding that Bush, Blankenship, and Frye were part of an enterprise, as they constituted a group of persons associated in fact. The enterprise involved manufacturing, storing, preparing for distribution, and distributing methamphetamine and counterfeit Percocet pills containing fentanyl. Frye acknowledged the existence of a joint effort, explaining that Bush supplied the ingredients and that Frye and Blankenship pressed pills together. Frye recalled participating in the pill-pressing operation seven or eight times during the time period alleged in the indictment. He recalled pressing pills with Blankenship three or four times. On each occasion, they manufactured between 100 and 200 pills. For his part, Blankenship admitted being a "pawn" in the operation and storing the fentanyl pills and methamphetamine.

{¶ 29} Contrary to Blankenship's argument, the State proved that he was part of an enterprise and that he engaged in a pattern of corrupt activity. The fact that the jury acquitted him of illegal manufacture of drugs did not compel a contrary conclusion. We do not know why the jury acquitted Blankenship on that charge. Even if we assume the existence of seemingly inconsistent verdicts, a conviction may not be reversed on the basis that it is inconsistent with an acquittal on another charge. *State v. Henderson*, 2d Dist. Montgomery No. 26018, 2014-Ohio-4601, ¶ 18. Once again, a rational trier of fact reasonably could have found Blankenship guilty of engaging in a pattern of corrupt

activity, and the evidence did not weigh heavily against the conviction. Accordingly, the second assignment of error is overruled.

## IV. Evidentiary Issue

{¶ 30} In his third assignment of error, Blankenship challenges the trial court's admission into evidence of a phone-call recording from the jail. The recording captured a call made by Blankenship to Bush while Blankenship was incarcerated. Blankenship contends the trial court erred in admitting the recording because the prosecutor failed to disclose its existence until the morning of the first day of trial.

{¶ 31} "In determining whether a trial court's decision to allow evidence of undisclosed statements constitutes an abuse of discretion, we consider whether (1) the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) foreknowledge of the statement would have benefitted the accused in preparing his defense, or (3) the accused was prejudiced by the admission of the statement." (Citations omitted.) *State v. Thompkins*, 2d Dist. Clark No. 1995-CA-99, 1996 WL 612855, *7 (Oct. 25, 1996).

{¶ 32} In the present case, the record reveals no objection by Blankenship when the State played the recording for the jury. Defense counsel only raised the issue at the close of the State's case when it sought admission of its exhibits, including the jailhouse phone-call recording. Defense counsel objected to admission of the recording on the basis that it had not been timely disclosed.

{¶ 33} Even assuming arguendo that the prosecutor's failure to disclose the phone-call recording until the morning of trial violated Crim.R. 16, we see no abuse of discretion in the trial court's admission of the recording into evidence. Applying the three-

part test set forth above, the record reflects that the prosecutor's disclosure on the morning of trial was not a willful violation of the discovery rule. The prosecutor explained that she had discovered the recording over the weekend while preparing for trial and disclosed it to defense counsel Monday morning.

**{¶ 34}** The record also fails to establish that more timely foreknowledge of the recording would have benefitted Blankenship's defense. Blankenship asserts that his primary defense at trial was a claim of duress. He argues that the recording undermined a duress claim because the substance of his conversation suggested that he did not fear Bush. Even if this is true, the content of the recording would have been the same whenever Blankenship received it. He has not identified anything he would have done differently if he had obtained the recording earlier or any alternative defense that he might have pursued. The trial court also explained why it refused to instruct the jury on the affirmative defense of duress for reasons other than the phone-call recording. In short, the trial court found duress inapplicable because there was no evidence that Blankenship was under duress when he commenced his drug-trafficking activity with Bush and Frye. Finally, we are unpersuaded that Blankenship was prejudiced by admission of the recording into evidence when the jury already had heard the recorded conversation in open court without objection. For each of these reasons, the third assignment of error is overruled.

## V. Sentencing

**{¶ 35}** In his fourth assignment of error, Blankenship contends the trial court erred in imposing his sentence under the Reagan Tokes Law. Specifically, he claims the trial

court's judgment entry erroneously recited maximum prison terms for each of his three Reagan Tokes qualifying offenses. He requests a remand for correction of the judgment entry. For its part, the State concedes error.

{¶ 36} Upon review, we agree that the trial court erred in including in its judgment entry separate maximum prison terms for each sentence imposed under the Reagan Tokes Law. But despite the trial court's erroneous recitation and inclusion of a separate maximum term for each Reagan Tokes qualifying offense, it nevertheless correctly calculated Blankenship's actual aggregate sentence.

{¶ 37} The parties agree that the Reagan Tokes Law applied to the sentences imposed for engaging in a pattern of corrupt activity (a first-degree felony), trafficking in a fentanyl-related compound (a first-degree felony), and aggravated trafficking in methamphetamine (a second-degree felony). Therefore, calculation of the proper maximum prison term was governed by R.C. 2929.144(B)(2), which provides:

> If the offender is being sentenced for more than one felony, if one or more of the felonies is a qualifying felony of the first or second degree, and if the court orders that some or all of the prison terms imposed are to be served consecutively, the court shall add all of the minimum terms imposed on the offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code for a qualifying felony of the first or second degree that are to be served consecutively and all of the definite terms of the felonies that are not qualifying felonies of the first or second degree that are to be served consecutively, and the maximum term shall be equal to the total of those

terms so added by the court plus fifty per cent of the longest minimum term or definite term for the most serious felony being sentenced.

{¶ 38} For engaging in a pattern of corrupt activity, the trial court's judgment entry imposed a minimum prison term of 11 years. For trafficking in a fentanyl-related compound, it imposed a minimum term of 11 years. For aggravated trafficking in methamphetamine, it imposed a minimum term of seven years. Because the trial court ordered these sentences to be served consecutively, the minimum term for the Reagan Tokes qualifying offenses was 29 years. The trial court also imposed a consecutive one-year prison term for a firearm specification and a consecutive five-year term for a major-drug-offender specification. Under R.C. 2929.144(B)(2), these additional six years must be added to Blankenship's 29-year minimum term for the Reagan Tokes qualifying offenses. The result is an aggregate minimum prison term of 35 years. Under R.C. 2929.144(B)(2), the aggregate maximum prison term is the 35-year minimum plus 5.5 years (50 percent of the longest single minimum term imposed), which equals 40.5 years.

{¶ 39} The trial court's February 9, 2023 judgment entry included the foregoing calculations, and it correctly imposed an aggregate minimum prison term of 35 years and a maximum term of 40.5 years. Its only error involved reciting separate maximum terms for each of the three Reagan Tokes qualifying offenses before correctly performing its calculations. As noted above, the trial court's judgment entry included prison terms of 11 to 16.5 years for engaging in a pattern of corrupt activity, 11 to 16.5 years for trafficking in a fentanyl-related compound, and 7 to 10.5 years for aggravated trafficking in methamphetamine. But "[t]he inclusion of both a minimum and a calculated maximum

totaling 50 percent of the minimum term for the individual offense is proper only when one felony prison term is imposed under the Reagan Tokes Act." *State v. Searls*, 2022-Ohio-858, 186 N.E.3d 328, ¶ 32 (2d Dist.), citing R.C. 2929.144(B)(1). "Where the maximum term is the calculated under R.C. 2929.14(B)(2) * * * the trial court should not state the maximum term for each individual offense as if it were calculated under R.C. 2929.144(B)(1). Rather, the trial court may state the aggregate minimum term and calculated maximum term following all of the individual sentences[.]" *Id.* at ¶ 33.

{¶ 40} Although Blankenship's aggregate minimum and calculated maximum prison sentence will not change, in accordance with *Searls* we will remand the case for the trial court to remove improper references to individual maximum terms for each of his three Reagan Tokes qualifying offenses. We sustain Blankenship's fourth assignment of error, which requests a remand to correct the judgment entry.

### VI. Conclusion

{¶ 41} For the foregoing reasons, the trial court's judgment is affirmed in part and reversed in part, and the case is remanded for the limited purpose of correcting the February 9, 2023 judgment entry's erroneous references to a maximum prison term for each Reagan Tokes qualifying offense.

. . . . . . . . . . . . .

EPLEY, J. and HUFFMAN, J., concur.